NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0044n.06
Filed: January 18, 2005

Case No. 03-6411

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


RONNIE LEE CURTIS,                )
                                  )
    Plaintiffs-Appellant,         )        ON APPEAL FROM THE
                                  )        UNITED STATES DISTRICT
                                  )        COURT FOR THE
    v.                            )        WESTERN DISTRICT OF
                                  )        KENTUCKY AT LOUISVILLE
                                  )
UNITED STATES OF AMERICA,         )
                                  )
    Defendant-Appellee.           )


BEFORE:   NELSON and COOK, Circuit Judges; and SARGUS, District Judge.[*]


      **SARGUS, District Judge.**   Ronnie Lee Curtis appeals the decision of the district

court which found that the United States Parole Commission has lodged a valid detainer against

him.  He also appeals the decision of the district court finding the United States Parole

Commission did not violate the Interstate Agreement on Detainers.  We affirm.

**I.**

      Curtis is a many-times over convicted felon who contends that he is no longer

subject to the jurisdiction of the United States Parole Commission.  Curtis's federal convictions

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of
Ohio, sitting by designation.

occurred prior to the passage of the Sentencing Reform Act, 18 U.S.C. § 3551, *et seq.*, effective November of 1987. He was paroled in March, 1989 with parole extending for an additional eight years.

In the early 1990's, Curtis committed a number of additional federal crimes and was given a thirty-three month sentence. While serving the federal sentence, the United States Parole Commission issued a parole violator warrant, since Curtis had committed these crimes while on the original term of federal parole. While still in federal custody on the 1993 federal convictions, Curtis was indicted in July, 1995 by the Commonwealth of Kentucky on a charge of murder. Later in 1995, Curtis was transferred from federal custody to state custody.

Due to a clerical error, officials at the Bureau of Prisons facility at which Curtis had been incarcerated signed the federal detainer from the Parole Commission as if the parole violator warrant had been executed. There is no question that the warrant was not executed, as Curtis was not in the custody of the Bureau of Prisons at the time the warrant was purportedly executed. As further explained below, the act of execution triggers a requirement on the Parole Commission that timely revocation proceedings commence.

The Parole Commission thereafter sought to correct the error and reissued a warrant, which, as in the case of the original warrant, was conditional. The Parole Commission advised the Bureau of Prisons that it should "not execute this warrant if subject is being held in custody on other Federal, State, or Local charges, unless otherwise ordered by the Commission." (JA 113). Thereafter, the Parole Commission began timely processing of revocation proceedings.

Curtis brings this petition under 28 U.S.C. § 2241 in which he claims that the

2

parole violator warrant currently lodged against him as a detainer is unlawful in that he has fully completed his term of parole. He also contends that the United States no longer has jurisdiction over him after it failed to retake him into custody following final disposition of the murder charges against him in state court.

**II.**

To fully frame the issues in this case, it is necessary to review in some detail the criminal history of the Petitioner-Appellant. Curtis is currently serving a sentence of life without parole in the Kentucky State Reformatory. Given this sentence, it is questionable whether a favorable disposition of the issues he raises will have any effect on any additional prison time he may be obligated to serve for alleged parole violations.

Curtis's involvement with the federal courts began with convictions for mail fraud and related charges. The district court combined three convictions for a total sentence of thirteen years, beginning on March 30, 1984. In March, 1989, Curtis was released from prison and placed on eight years of parole.

Thereafter, Curtis committed a large number of additional offenses, several of which resulted in federal sentences. In February, 1993, he was sentenced to thirty-three months for theft, obstruction of justice and corruptly influencing justice. In October of the same year, he was sentenced for wire fraud to twenty-four months, to be served consecutively with the February, 1993 sentence.. With credit for good time, Curtis could have been released as early as April, 1996.

After Curtis began serving the two federal sentences imposed in 1993, the United States issued a parole violator warrant, alleging that Curtis had committed additional crimes

3

while on federal parole. In connection with this action, the Parole Commission lodged a detainer at the Federal Correctional Institute in Terre Haute, Indiana where Curtis was then incarcerated. He was subsequently transferred to the Petersburg Prison where he remained until July, 1995. Curtis was indicted in July, 1995 for murder by the Commonwealth of Kentucky, which made use of the Interstate Agreement on Detainers, 18 U.S.C. § 2, to cause Curtis to be placed in their custody for trial.

On April 20, 1996, the approximate date that Curtis would otherwise have been scheduled to be released from the custody of the Bureau of Prisons, officials at the Petersburg Prison made an unexplained clerical error. The federal detainer filed by the Parole Commission was signed as if the warrant had been executed, meaning that Curtis would then be held only for the alleged federal parole violations. This, of course, was not the case, since Curtis was no longer in the custody of the Bureau of Prisons and the detainer could not be used to hold him in the Petersburg Prison. More importantly, the warrant explicitly stated "NOTE: Do not execute this warrant if subject is being held in custody on other Federal, State, or Local charges, unless otherwise ordered by the Commission." (JA 113). Further, a form attached to the warrant also recited "The parolee is awaiting trial or sentencing on new charges; place a detainer and assume custody when released." (JA 113).

The Parole Commission would have been otherwise required to commence parole revocation proceedings had the warrant been validly executed. After the Commission became aware that the warrant had been erroneously signed as executed, it issued a supplemental warrant which also included the pending murder charges as additional allegations of parole violation. Further, a reissued warrant was then lodged as a detainer against Curtis in the state facility where

4

he was held awaiting trial. After he was convicted of murder and incarcerated at the Kentucky State Reformatory, the Parole Commission lodged a reissued warrant as a detainer against him.

Curtis contends that once the warrant was executed, he was essentially being held for the alleged parole violation and that he has now served all the time remaining on parole. Alternatively, he contends that the United States lost jurisdiction over him due to violations of the Interstate Agreement on Detainers by not taking custody of him after he was convicted of murder in the Kentucky courts.

**III.**

The facts in this case are not in dispute. As such, the standard of review for the denial of a Section 2241 petition is *de novo*. *Asad v. Reno*, 242 F.3d 702, 704 (6th Cir. 2001).

**A.    The Detainer**

The portion of this case dealing with parole implicates statutes that apply only to convictions which occurred prior to November 1, 1978, the effective date of the Sentencing Reform Act. The issues relating to detainers and warrants have broader relevance. A review of the statutes relating to detainers and warrants is helpful to the analysis. A detainer is described as a "request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when the release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719 (1985). This concept is important, since a detainer does not represent the basis upon which a prisoner is actually held in confinement. Rather, a detainer assumes that a prisoner is incarcerated on other charges. The detainer seeks to make sure that the prisoner is not released before the authority issuing the detainer can obtain future custody on the charges referenced in

the detainer.

In Curtis's case, the Parole Commission instructed the United States Marshal to place a detainer upon Curtis while he was housed in the Petersburg, Virginia Federal Correctional Institute. The document expressly recited "NOTE: Do not execute this warrant if subject is being held in custody on other Federal, State, or Local charges unless otherwise ordered by the Commission." (JA 113). No such extraordinary order was given by the Parole Commission. On its face, the warrant was not to be executed if Curtis was being held on other federal, state, or local charges, which he was.

If, in fact, the detainer became effective, meaning that the warrant was executed, Curtis would then remain in custody based upon the warrant from the Parole Commission. Curtis confuses a clerical act with the actual basis for his confinement. At no point relevant to this case was Curtis held in confinement based upon a detainer placed upon him by the Parole Commission. Instead, the return of the U. S. Marshal erroneously indicated that the warrant had been executed and that Curtis was then in custody based upon the detainer. Fundamentally, merely saying the warrant had been executed, when in actuality it was not, does not make it so.

Our Circuit has yet to address this issue. The Seventh and Tenth Circuits have reached a conclusion that an invalidly executed warrant does not trigger the time limits within which the Parole Commission is required to commence revocation proceedings. In *Barnard v. Henman*, 89 F.3d 373 (7th Cir. 1996), the Parole Commission notified the Marshal Service of its intention to place a detainer upon Barnard. Similar to the facts in this case, the Marshal Service did not follow the instructions set forth by the Parole Commission and instead obtained actual custody of Barnard before he had completed a state prison term. Nonetheless, the Seventh

6

Circuit determined that "only *valid* execution of the parole violator warrant triggers the Commission's procedural responsibilities." *Id.* at 377 (emphasis in original) (citing *Sinclair v. Henman,* 986 F.2d 407, 408 (10th Cir. 1993)). The Fifth and Tenth Circuits have held that if the Marshal Service executes the warrant contrary to the Commission's instructions, the execution of the warrant is invalid, and the Commission's duty to hold a revocation hearing is not triggered. *Sinclair*, 986 F.2d at 409; *Chandler v. Barncastle*, 919 F.2d 23, 26-27 (5th Cir. 1990); *McConnell v. Martin*, 896 F.2d 441, 445-46 (10th Cir. 1990); *see also Santa v. Tippy,* 14 F.3d 157, 159 (2nd Cir. 1994). We agree with the rule adopted by these circuits. As explained in *McConnell v. Martin*, 896 F.2d at 446:

> the Parole Commission alone has the power to choose whether to order that a parole violator warrant be executed or be filed as a detainer. That power to choose would be substantially impaired if a United States Marshal could frustrate it by executing a parole violator warrant that the Commission had directed was not to be executed.

The Commission has the authority to issue a warrant and instead treat the document as a detainer, not to be executed until the prisoner has completed another sentence of imprisonment or is otherwise released from unrelated charges. *See Tijerina v. Thornburgh*, 884 F.2d 861, 865-66 (5th Cir. 1989). Consistent with this authority, the cases described *supra* hold that the authority of the Commission may not be overridden by an erroneous execution of the warrant by a Deputy United States Marshal.

Curtis contends that because the warrant was allegedly executed in April, 1996, his alleged parole violation should have been adjudicated within the time limits set forth in 18 U.S.C. § 4214. Further, had his parole been revoked and the Commission imposed the greatest possible sentence remaining on his term of parole, he would have completed the entire term at

7

the time he filed his petition under Section 2241.

Because he was never in custody for parole violations, these arguments are without merit. At all times relevant to his claims, Curtis was in custody on either his 1993 federal sentences or on state charges of murder for which he was subsequently convicted. In reality, the warrant issued by the Commission operated only as a detainer.

For these reasons, we affirm.

**B.    Interstate Agreement on Detainers**

Curtis asserts that the United States failed to comply with Article V(e) of the Interstate Agreement on Detainers found at 18 U.S.C. § 2. Article V(e), states: "[a]t the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending State." Curtis contends that pursuant to this provision, the detainer lodged against him is invalid in that the United States did not insist upon his return to federal custody following his murder conviction.

The Interstate Agreement on Detainers is a compact entered into by the federal government and 48 states, including Kentucky, under Constitutional authority found in Article I, Section 10, Clause 3. The agreement contains a mechanism by which one state may request custody of a prisoner held by another in order that the prisoner may be tried on charges issued in "the receiving state" as the term is used in Article II(c) of the agreement. The compact permits expeditious resolution of charges pending against persons already incarcerated in other jurisdictions.

As an initial matter, this Circuit has held that alleged violations of the Interstate Agreement on Detainers are not cognizable under either Section 2254, relating to state proceedings, and Section 2255, relating to federal proceedings. *Metheny v. Hamby*, 835 F.2d 672 (6th Cir. 1987); *Mars v. United States*, 615 F.2d 704 (6th Cir. 1980). In *Metheny*, this Court

8

held that unless the violation of the Interstate Agreement on Detainers involved "a fundamental defect which inherently results in a complete miscarriage of justice" that no habeas relief was available. *Metheny,* 835 F.2d at 673.[1]  Under the facts of this case, there is no serious argument that the failure of the United States to seek the return of a state prisoner serving a life without parole sentence to complete parole revocation proceedings worked a complete miscarriage of justice..                    Curtis brings this case under 28 U.S.C. § 2241, which, while similar to § 2245 and § 2255, is the only vehicle by which a federal prisoner may attack the manner in which a sentence is executed.  While the holdings in *Mars* and *Metheny* apply to cases involving § 2254 and § 2255, the same logic applies to claims under § 2241 regarding alleged violations of the compact on detainers..  Even if a merits analysis is warranted, Curtis' argument fails.  Curtis may be correct that as he serves his sentence in Kentucky, the sentences imposed by the district court in 1993 have expired under Article V(f).  This argument, however, undercuts the conclusion Curtis wishes us to reach.  There was no need for federal authorities to seek a return of Curtis to federal custody following his murder conviction, at least at the time this petition was filed.  At best, the only federal basis on which to detain Curtis is the detainer secured by the Parole Commission.  It is beyond dispute that the Parole Commission has the discretion to simply lodge a detainer against a prisoner and defer execution of the detainer until the prisoner has served time on the crimes for which he or she was then incarcerated.  This procedure is expressly authorized in 18 U.S.C. § 4214(b)(1) which provides that "a parole revocation warrant or summons issued

---

[1]The magistrate judge recognized in this case that the *Metheny* analysis has been questioned by Justice White in a dissent in the Supreme Court's denial of Metheny's petition for a writ of *certiorari*. *Metheny v. Hamby,* 488 U.S. 913 (1988) (White, J. dissenting).  Justice White noted a split among the Circuits regarding the availability of habeas relief for an alleged violation of the Interstate Agreement on Detainers.  Nonetheless, the law in this Circuit is established by both *Metheny* and *Mars.*

9

pursuant to Section 4213 may be placed against him as a detainer." Further, nothing in the Interstate Agreement on Detainers limits the Parole Commission's authority to lodge detainers.

For these reasons, we affirm the decision of the district court which concluded that the United States has not lost jurisdiction over Curtis by way of the detainer currently lodged against him.

**V.**

Based upon the foregoing, the decision of the district court is affirmed in all respects.